## Daniel Healy, Plff. in Err., *v.* Benjamin F. Dettra.

Words spoken of a lawyer, in reference to what he has done in his profession, that he is a "blackmailer," are actionable *per se.*

H. refused in the presence of several witnesses to shake hands with D., saying: "I don't shake hands with blackmailers; a certain person told me he had to pay you hush money in the prosecution against me." D. threatened to sue H.; whereupon H. replied: "The sooner the better; I will show that you are a blackmailer and that you have blackmailed me." *Held,* that, in an action for slander, upon proof of these facts D. was entitled to recover against H., without proof of special damage.

In the absence of malice, compensation is the measure of damages.

If the words were uttered with special malice punitive damages may be awarded; and in estimating such damages the defendant's means may be taken into account.

Under the act of March 30, 1875, a change of venue in civil cases, on the ground that the defendant cannot have an impartial trial, is within the discretion of the court below; and a refusal to grant the change will not be reversed unless the discretion has been abused.

An action for slander for calling an attorney a blackmailer is not a case where a large number of the inhabitants of the county are interested adversely to the defendant so as to make it obligatory on the court to grant a change of venue, under the act of 1875, although the words were spoken about a criminal prosecution for alteration of the tax records by the defendant.

(Argued February —, 1887. Decided March 14, 1887.)

January Term, 1887, No. 88, E. D. Error to the Common Pleas of Berks County to review a judgment on a verdict for the plaintiff in an action of trespass on the case for slander. Affirmed.

After issue joined and before trial the defendant presented a petition for a change of venue, upon the grounds that both the

NOTE.—Punitive damages may be awarded in actions for libel and slander where the publication was malicious (Carothers v. O'Brien, 29 Pittsb. L. J. 395; Brown v. Reiter, 21 Pittsb. L. J. 143); or wantonly or recklessly made (O'Neil v. Kredel, 1 W. N. C. 69; Barr v. Moore, 87 Pa. 389, 30 Am. Rep. 367; Regensperger v. Kiefer, 20 W. N. C. 97). By the act of July 1, 1897, punitive damages were abolished as to libel, but the right to so recover is reaffirmed by the act of April 11, 1901. And by the act of May 12, 1903, such damage may be awarded where the libelous matter is given special prominence by cartoons or head lines.

judges of the common pleas of Berks county were material wit-
nesses in the case; that the inhabitants thereof were interested
in the questions involved, and that a fair trial could not be had
by defendant in Berks county. In support of the petition there
was filed an abstract of 101 articles in seven English news-
papers published in Berks county, from August, 1884, to No-
vember, 1885, all reflecting on him.

The application was opposed by the plaintiff, and denied by
the court, and the case went to trial on October 13, 1886, AL-
BRIGHT, P. J., of Lehigh county, presiding.

The facts as they appeared at the trial were stated in the
charge of the court, which was as follows:

In this action, brought by Benjamin F. Dettra against Daniel
Healy, the plaintiff seeks to recover damages which he alleges
he has sustained by reason of the defamation of his character by
the defendant. In law a man has a right to his good name and
reputation; that is, he has an equal right to be protected against
false and wilful communications, whether written or printed, or
by word of mouth, made to his prejudice or damage.

The plaintiff alleges that the defendant, without any just
cause or excuse, spoke that of him which was false and defama-
tory, and that he did unlawfully; and for that he seeks to recover
damages. If, under the rules of law which will be stated to
you, and the facts as you shall find them from the evidence, the
plaintiff has not made out his case, or the defendant has estab-
lished some sufficient defense, your verdict will be in favor of
the defendant; while, [if you find that the plaintiff is entitled
to recover, you will return a verdict in favor of the plaintiff for
damages in such amount as may be deemed by you proper under
the circumstances and under the law.]

For slander, that is, defamation by word of mouth, an action
must be brought within one year after the utterance of the
words. This action was brought on the 3d of September, 1885,
and it is alleged that the slanderous words complained of were
spoken on the 2d of September, 1885, the day before the action
was brought. There is no doubt, therefore, that the action was
brought in time.

The plaintiff alleges that at the time of the utterance of these
alleged slanders, he was a resident of this city, a member of the
bar of Berks county, and a practising lawyer, and that the de-

fendant said of him, in substance, that he was a blackmailer and had blackmailed him (the defendant).

Not all words that are spoken are actionable. One man may say that of another which is uncomplimentary and rude and disagreeable to be borne, yet it may not be actionable; and in such a case, the plaintiff cannot recover unless he can show special damage, unless he can show that by reason of the utterance of these words he lost something or sustained some injury.

There is, however, another class of words which are actionable, and for the speaking of which without just cause or excuse a plaintiff is entitled to recover damages without showing specially that he had any particular loss. That class of words is called actionable. For instance, to say of a man that he is the greatest rogue in the world would not be actionable, because it does not charge any particular thing, which, if proven, would certainly bring inconvenience upon him; but, to say of a man that he is a thief, or that he is a murderer or a fornicator, is actionable, because, if true, the man could be punished under the law.

To say of a practising lawyer that in the practice of his profession he has been guilty of blackmailing is actionable. To say of him generally that he was a blackmailer would not subject a man to indictment and punishment; but, [inasmuch as it is considered that it injures the man in his business, and inasmuch as it seems to be taken for granted that in order to practise law a man ought to be an honest man, to say of him that he is a blackmailer is unlawful, and, if it is done without just excuse, actionable.]

[And so in this case, if it is proved that the defendant spoke the words charged against him in the declaration, to which I will call your attention particularly, and that he had no just excuse for it, the plaintiff is entitled to recover, and he is entitled to a verdict—even although no special damage has been shown.]

It is charged that on the 2d of September, 1885, in this city, Healy, the defendant, and Dettra, the plaintiff, met; that Dettra then extended his hand to Healy and offered to shake hands with him; that Healy said, "I don't shake hands with blackmailers," and "A certain citizen of this commonwealth told me that he had to pay you $325 hush money in the prosecution against me;" that Dettra then said "I will sue you;" and Healy said: "That is what I want, and then I will have the opportunity of showing

that you are a blackmailer and that you have blackmailed me."

This is the plaintiff's cause of action; and, in order to succeed, the plaintiff must show that these words in substance were uttered. [It need not be proved that the very words thus laid were uttered; but it must be proved substantially that they were uttered]—that words that have the same substantial meaning were uttered.

Witnesses have been called who were present at the interview when it is said the slander was uttered, and the testimony of the witnesses is for you to recollect. I call your attention to some of the testimony as I have it.

Mr. Dettra, the plaintiff, himself says that he said, "How do you do, Mr. Healy?" Healy then said, 'I will not shake hands with blackmailers.' I then said to Healy, 'What does this mean? Explain yourself.' Mr. Healy said, 'I have nothing to explain.' Said I, 'I want an explanation, and I demand it before you leave this room.' Says he, 'You know all about it;' he then said, 'Mr. Jacobs told me that he had to pay you the $325 hush money in a certain criminal prosecution which was against me.' I, of course, then said, 'I will sue you; I will make you prove it.' Says he, 'Sue and be damned, and then I will prove that you are a blackmailer and that you blackmailed me.'"

Mr. Banks says: "I heard Healy say to Dettra that he would not shake hands with a blackmailer or blackmailers. Mr. Dettra wanted to know what he meant, wanted to know whether he called him a blackmailer. Healy informed Dettra that J. H. Jacobs had told him that he had received $300 or $325, I don't remember which, hush money. Dettra said he would sue him. Healy told him he could go on, that he would prove what he had said."

Simon P. O'Reilly says: "Dettra extended his hand to Healy, and Healy said, 'No, sir; I don't want to have anything to do with blackmailers.' Healy says, 'I don't want to have anything to do with such as you.' Dettra said, ' I want you to take that back right away; you are a damned liar.' Dettra continued and said: 'Gentlemen, I call you here to witness that this man called me a blackmailer.' Healy said, 'I didn't say that; I said I didn't want to have anything to do with blackmailers.' Then Mr. Healy said, 'You got a part of that $300;' and I think there was some odd dollars. Dettra said, 'Who told you that? Healy said, 'Jacobs told me.' Dettra said, 'Well, I will go right

away and see Jacobs, and if Jacobs said that, he is a liar, and I will have you arrested before you leave town.' Healy said, 'The sooner the better.' "

[Mr. Weaver says that he heard some loud talking, looked up, and heard Dettra say something to Healy; then Healy said he had received hush money, the amount being $325, and said he could prove it; he said Jacobs told him so.

Then Mr. Healy himself testified to what was said on this occasion.

Now, gentlemen, consider what has been testified on this point; and [if the plaintiff has not proved, by witnesses whom you believe, that the words in substance, having the same meaning as those laid in the declaration, which I read to you, were uttered, you will find in favor of the defendant; while if they have been proved, you will proceed and make further inquiry respecting certain other points arising in the case.]

[In the trial of an action of slander, the meaning of the words is for the jury.]

[The jury are to take it that words have the same signification that is usually attached to them. The way in which the world, the people generally, understand words, you are to understand them.] I believe I have said to you that to say of a lawyer in reference to what he has done in his profession that he is a blackmailer is actionable. If I have not said so, I say so now, [and I say to you that if the plaintiff has made out words as laid in his narr. in substance, he is entitled to recover.] He is entitled to recover some damages.

Where a party is sued for a slander, he may prove that what he said was true; and if he convinces a jury of that fact, the plaintiff takes nothing, but loses his case, and the verdict is in favor of the defendant. Here, however, as the case is before you, the defendant does not justify. He does not say, "I said so and it is true;" but he pleads "not guilty." He does not attempt to say that what he is said to have uttered of Dettra is true. In fact, as counsel have said repeatedly in your hearing here, they do not believe the charge that Mr. Dettra was a blackmailer, or that he received any part of the money which it is alleged Healy had to pay wrongfully.

[The defendant's position in the first place is that the evidence will not warrant you in finding that the words as stated in the declaration are proved. That point we rule against the de-

fendant, and say to you that from the evidence it may be found, if satisfactory to you, that the words are proved] ; and we refer to you the question whether or not the same are proved.

[I will state here that in an action of slander where the words are actionable, and the truth of them is not proved or attempted to be proved, the plaintiff is entitled to recover. He is entitled to something.] The damages may be, in the first place, compensatory; that is, make the plaintiff whole for what he has suffered. Where there are circumstances of aggravation or express malice, the jury can, in addition to that, give punitive damages; . that is, an additional and further sum as a punishment to the defendant, such further and additional damages by way of punish-, ment as a jury may deem just.

If you find in favor of the plaintiff, the next inquiry would be as to the amount of the damages. [It has been argued that inasmuch as the plaintiff did not show that he had any special loss, that he lost any particular client, you can, if you find no express malice, find in favor of the plaintiff for only nominal damages: 6¼ cents, or some other small sum. The court instructs you that that is not so; that if these words were uttered, even although the plaintiff has shown no special particular damages, you may award him more than nominal damages.]

[You should take into consideration every consequence which the words would have a natural tendency to produce, but not merely problematical or eventual damages, which may possibly happen or possibly may not.]

[You are to take into consideration fairly in this case the plaintiff's rank in his profession of the law, the manner in which the alleged slander was uttered, the extent of the circulation and publicity that was given to the words—and by this, I mean the publicity that was given by the defendant when he uttered it, as to who was by, how many were by, whether he afterwards spoke words of the same effect not in themselves actionable] ; and then, whether or not the attack by the uttering of the words was provoked or unprovoked.

[So that you are not bound to give nominal damages only, but you may consider the slander, if it is proved, and all the attending circumstances, and then give such damages as will compensate the plaintiff for the defamation.]

[If you find in favor of the plaintiff, and if you should find that there was special malice in the defendant, that is, that he

had a special ill will against the plaintiff, a bad intent or a wicked motive, then, in addition to the damages of which I have just now spoken, you may give a further sum as a punishment upon him, within just bounds, bearing in mind all the circumstances, including his estate.]

You remember that the plaintiff showed what the defendant is worth in dollars.    The defendant said that he was worth $50,000 or $60,000.    It does not necessarily follow that if a rich man utters a slander, he should be compelled to pay more than a poor man; but, if the jury reach the question of inflicting damages as a punishment, then the degree of his estate may be considered; because a smaller, moderate sum inflicted upon a poor man would be grievous to be borne by him, and hard to pay, while that same small or moderate sum inflicted upon a man of large estate would be considered a trifle or almost nothing.    In that way, in a certain contingency, you can consider the amount of the defendant's estate, and in no other.

The defendant takes the ground, in the first place, that he had reasonable cause to suspect that Dettra was guilty of what he is alleged to have been charged with by the slanderous words. And here I may briefly refer to the origin of this difficulty.

The plaintiff, after proving, as he alleges, the slanderous words, in order to give the jury to understand to what the words referred, and what he complains of, showed that there was a certain prosecution.    It is alleged here that about May, 1883, Mr. Healy, who was the owner of real estate and a taxpayer in this county, went into the office of the commissioners and changed certain figures in an assessment of his property; and that nearly two years afterwards there was an information made before an alderman of this city, and he was arrested, bound over to appear at court to be tried on that charge of falsifying and altering the record.    Then Mr. Healy, it seems, brought about what is called a settlement of that case, and paid certain money to certain individuals, in the first place, to one or several gentlemen who it seems acted as his attorneys.    It is claimed by the plaintiff that the defendant, by the alleged slanderous words, intended to charge that he had been blackmailed, that money had been extorted from him to settle this prosecution, and that Mr. Dettra, the plaintiff, got a portion of it.    It appears that at the time that this prosecution was brought, and for some time before and some time afterwards, Mr. Dettra was acting as counsel to the county commissioners.

I do not remember any evidence in this case from which you would find that Mr. Dettra had anything to do with the settling of the case. In fact, I do not remember any evidence from which you could find that he had anything to do with starting the prosecution. It is said that when Mr. Healy asked him to change the figures, or to have them changed back again, he said that he could not do that; and it is also said that when the county detective, who, it is said here, made an information at Healy's own request, came to Dettra and said that Healy wanted to be arrested, Dettra said that he had changed the record, and that he might proceed and arrest him.

I understand the defendant's position to be that Dettra had nothing to do, as it turns out now, with starting the prosecution, or settling it; and that is the position they take before you for the purpose of doing justice, as they concede, and very properly, to Mr. Dettra, and also as a reason why you should not act with severity if you find in favor of the plaintiff. But they do say that the circumstances surrounding the defendant at the time the settlement of the criminal case was made, and the saying of what he did say against Dettra, gave him grounds for suspicion that Dettra was involved in it.

[When a man is charged with having slandered another, the law is that although he cannot prove that what he said was true, yet if he can convince a jury that he had good grounds to suspect that what he said was true, the damages against him shall not be so heavy as they otherwise would be.]

[The verdict must be against him, if he said what he had no right to say;]but you can very well see that a man who had good grounds to believe that what he said was true ought not to be punished as severely as one who, either knowing that what he says is false, says it, or who recklessly says it whether he has any reason to believe it is true or not.

Now in the trial of this case, in the examination of the witnesses, and in the argument before you, a great deal of prominence has been given to the changing of this record in the commissioners' office, as to how this prosecution was started and how it was settled. That has nothing at all to do with the case, except so far as it may explain the words that are said to have been uttered, and so far as it may explain the motives of Mr. Healy; for there is no allegation here that Mr. Dettra received any portion of the money that was paid on the settlement; and there

is no allegation by the defendant now that Dettra was guilty of what he charged against him.     What the defendant does say, and says in extenuation of damages, if you find against him, is that he had good ground to believe that what he said was so; and if you find that that is the fact, you ought to give him the benefit of it in estimating the damages.

[The law provides that if anyone shall alter, deface, or falsify any minute, document, book, or any proceeding whatever of or belonging to any public office with this commonwealth, he shall be guilty of a misdemeanor, and shall be punished in the criminal courts.]

This matter of settling the charge against Healy has been spoken of in such a way as perhaps to give you a wrong impression about it; and to correct that, I will briefly refer to a certain phase of it.     Kershner, the county detective, made the information against Healy, and it is said, and I believe by Healy himself or by his counsel, that he (Healy) wished him to do it, in order, I believe, that he might have the complaint made by his friends and not by his enemies.     It is said that he was afraid somebody else would arrest him, and that after this matter was adjusted in some way, and money paid, Kershner went and withdrew the charge on the justice's docket, and the costs were paid.

It has been said also that the county commissioners did not want to prosecute, and that therefore nobody should have prosecuted, and consequently that Healy was wrongfully dealt with.

If a man defaces or alters a public record, or commits a crime of that class, anybody may prosecute, and until a man has been tried and punished or acquitted within the time limited by law, he may be prosecuted once, twice, or a dozen times, provided the prosecutions are taken up by the prosecutor and he is never tried.     The county commissioners had not the control to say (if a record in their office was corrupted and altered) that there should be no prosecution and that if they did not prosecute, the man is to go unpunished.     The county detective cannot say that successfully, nor the district attorney, nor any man living. It is the class of criminal cases that the prosecutor can settle, but his settling it does not free the defendant.

If an assault and battery is committed, or cheating by false pretenses, so that nobody is particularly injured by the person beaten or cheated, there the law says there may be a settlement; because the prosecutor has a remedy by civil action for damages.

But that is not the case in larceny, murder, forging, or falsifying records which affects not any one individual or body of men, but the people generally. So far as that may throw any light upon the motives of the actors in this prosecution, you can consider it; and outside of that, it has nothing to do with the case. There was a criminal prosecution which, if it had not been ended, would have come into the court, and the defendant in that prosecution (Healy) would have been tried, and either convicted and punished, or acquitted. That criminal prosecution was settled although the parties had no power to settle it. And, as all agree, what Healy said of Dettra was said in regard to the settlement of that criminal prosecution.

Now Healy says that he had reason to believe that Dettra was involved in what he alleged was the unrighteous extorting from him of a sum of money. [If he has convinced you that he had good ground to believe that, although it turned out afterwards that he was mistaken, then you will receive that in mitigation of damages]; you will receive that as the reason why damages against him should not be so severe. If he has not made out that defense, of course you will give it no weight, and find damages the same as if that defense had not been set up.

Healy testifies, and I believe other witnesses, that it was said that he had been blackmailed, and that this prosecution was stirred up against him for the purpose of blackmailing. It is proper, of course, to receive that; [and if that and the other testimony bearing on the point convinces you that he had reason to believe that Dettra had something to do with it, you may treat it in the manner I have just now pointed out. But if not, you cannot give it such effect]; because if Healy was blackmailed and if he had reason to believe that certain people had blackmailed him but had no reason to believe that Dettra had anything to do with it, then he would not have been warranted in making the charge that Dettra had blackmailed him.

Healy says that when he paid the $325 Jacobs said: "This money is not all for me; this has to be divided into seven or eight shares;" and that the two Rothermels have some of it to get,—these are members of the bar, one of them district attorney; and to the other Healy had given a fee to represent him in that prosecution,—and that the two Kershners had some of the money to get, and that Bland and Dettra had some to get, and then, I believe, it is said that certain others were mentioned also. Healy

says that Jacobs said to him that thus the money was to be divided. Mr. Jacobs denies it totally, says there was nothing of the kind said; but that what Healy paid there, he paid him and John Rothermel, the other lawyer whom Healy had employed.

Now, which of these two men remembers correctly what was said? Which of them do you believe, if they remember correctly what was said? If Healy's testimony is taken and Jacobs's is rejected, then you may well say that Healy had reason to believe that Dettra had shared in the division of the money, because he had been told so by a man whom he had employed as his attorney. But if Mr. Jacobs's statement is believed to be true and Healy's untrue, then, so far as that is concerned, he had no reason to believe that Dettra had received part of the money paid.

Healy testifies that at Bissinger's saloon one of the county commissioners had said that if he (Healy) would give Dettra $20 or $25, Dettra would settle the case; and that Dettra had told him (Keller) so. If that is true, Healy had reason to believe that Dettra was implicated in the matter; and therefore he would have an excuse to have the damages reduced. But Colonel Keller says that is not true, that no word of the kind was said, that he mentioned nothing to Healy about Dettra's wanting to settle the case, or that it would take $20 or $25.

Which of these two men remembers what was said there? And if they remember equally, which of the two will you believe? This is material upon the question of damages. If what Healy says is true and what Keller says is untrue, then Healy had reason to believe that Dettra was a partner in the transaction of extorting, of sharing in the money; but if Colonel Keller is believed, and Mr. Healy is not believed, then that ground of defense falls.

Now is there anything else in the case as it was developed before you by which Healy can convince you that he had reason to believe that Dettra had shared in the money paid? I believe they all agree in saying that Dettra was never at Jacobs's office, or at any of the places where they met to settle the case, nor was he at the 'squire's when the prosecution was brought or settled.

If on the points to which I have specially directed your attention, you find that Healy is not borne out, but that Jacobs's and Colonel Keller's statements are believed, and if you cannot find any other evidence to lead you to believe that Healy had

cause to think that Dettra was involved in getting money from him and shared in it, and [if you find that the words alleged were spoken of the plaintiff regarding his profession as a lawyer and something he had done in it, then the plaintiff is entitled to recover]; and if he has convinced you that on the defendant's part there was any express malice, you can find punitive damages. On the other hand, if you believe Mr. Healy, you can give him the benefit of his belief in the way I have indicated.

[As a further defense, the defendant says that at the time he uttered these words he was not responsible; that he had been sick in body and in mind, and that his mind was affected in such a way that on the second of September, 1885, when he is alleged to have uttered these words, he was not responsible; that he was unable to control his utterance by the exercise of his will, in other words that his mind was so much affected that he could not by the exercise of his will power control his own words. If that is proved, then you would have the position of a man who was either insane, or for all practical purposes so far as it relates to these questions the same as insane, and ought not to be held responsible for his acts. If that is true, your verdict would still have to be in favor of the plaintiff; because my opinion is, as a matter of law, that that would not turn the plaintiff out of court; but the plaintiff would be entitled to only nominal damages, six cents or some other small sum].

But, before that defense can avail the defendant, he must prove to you that he was of unsound mind or had no control of his utterances; that he could not help what he spoke. If it does not amount to that, it is no defense; although if there was weakness to a less degree than that, it might be received in mitigation of damages.

Certain persons, the defendant, members of his family, certain physicians and others, have testified to this condition of Mr. Healy. He had been sick years ago, afflicted in body and mind; and it is alleged that he is not a well man now, and that he has certain physical and mental troubles under which he labors. All this evidence you will consider, and you will consider how he was in September, 1885.

When we come to consider the state of health, whether of body or mind, of an individual, at a certain day, we can, of course, consider how it was before and afterwards, but only in order to

throw some light upon his condition at the point of time in question. Here the question is how Mr. Healy was at the time of the alleged uttering of the slanderous words. If he was irresponsible, could not help what he said, could not control his words, you will give it the effect I have already indicated, and find only nominal damages for the plaintiff, some small sum. [But if the defendant has not satisfied you of that fact—that his condition was such that he is not to be held responsible, then of course, he would not be benefited by that point which he has made in this case.]

Because a man may be irritable, or inclined to get angry, or excitable, will not excuse him when he is sought to be charged with the consequences of his slander. Actions for slander lie not only where the slanders are cool and deliberate; but the consequences are visited upon men generally, provided they are in their right mind and have control of their utterances. It will not do for a man to say: "Simply because I am excitable, irritable, and get angry soon, and then talk too much, if I slander another, he shall recover nothing, or shall recover only a small sum;" but that immunity only is given to men who have lost their reason, who cannot control their utterances, and who are to be held irresponsible by reason of mental deficiency. You will consider all that the witnesses said on this point, how Mr. Healy was, referring to his mental condition years ago, and how he is now; and from all this, if you can, you shall say how he was at the time the alleged slander was uttered. If he was irresponsible, you will give him the benefit of it; [if he has not convinced you of that fact, you will treat the case the same as if that particular defense had not been made.]

I believe that after I have answered the points of the parties, all the instructions have been given to you which are required. You will understand that wherever the court announces a rule of law, it is your duty to receive that as the law; because, if the court should be wrong in stating the law, it could be corrected in a higher court. What the court says is reduced to writing, and may be reduced to print and reviewed in the supreme court. While if the jury should disregard it, and make a law of their own, there would be no record as to what rules they had laid down and acted upon, and the party injured by your mistake, if you made a mistake, would have no redress. When the court speaks of matters of fact, and indicates to you how you should

regard them, that instruction is not binding; because all questions of fact are for the jury, and they have entire control of them.

I will now answer the points submitted on the part of the defendant.

2. "If the jury believe that, from information derived from any other person or persons, or from any circumstances which connected the plaintiff with the prosecution instituted against Healy, Healy believed that the plaintiff had received a portion of the money that Healy had paid to settle that prosecution — such belief would disprove the allegation of malice in the utterance of the words claimed by the plaintiff to have been uttered by defendant on September 2, 1885; and as the plaintiff has proved no special damage suffered by him in consequence of the utterance of such words, he is not entitled to a verdict for more than nominal damages."

*Ans.* Negatived. I cannot affirm that in such event nominal damages, that is, a trivial sum such as 6¼ cents only, can be given.

3. "If the jury believe that Healy, the defendant, at the time of the utterance of the words charged as slanderous in this case, was, and had been, for some time prior thereto, laboring under great excitement of mind, in consequence of the annoyance and disgrace of the charge preferred against him, of altering the assessment of his property, and the prosecution against him for such act; that he was in a condition bordering upon mental aberration, and was thereby unable, by reason of physical and nervous disability, to control the operations of his mind, he was thereby rendered irresponsible, and the verdict of the jury should be for the defendant."

*Ans.* Negatived.

4. "Under the pleadings and evidence in this case, there can be no recovery against the defendant."

*Ans.* Negatived.

The defendant's counsel has suggested that considerable has been said before you about a certain plea of justification which at one time was on the record. In an action of slander a defendant may plead, "Not guilty," or he may plead, "Justification," which substantially is saying, "I have said the words, and they are true;" or he may plead both.

In this case it appeared in your presence that there had been a

plea of justification placed on record by the defendant; and at
the time this trial was begun, that plea was withdrawn by the
defendant, by leave of the court. It is now complained that it
was argued before you that inasmuch as the defendant had put
in that plea and left it on record for thirteen months, it was an
additional injury to the plaintiff, and therefore perhaps you
ought to be more severe on the defendant. You ought not to
give it that effect. The parties put that plea upon the record,
and they afterwards withdrew it, and so for all legal purposes
and for all purposes which you may consider, it is the same as if
they had not put it on record at all.

Verdict and judgment were for the plaintiff, for $3,000.

The assignments of error specified the action of the court in
refusing a change of venue; the portions of the charge inclosed
in brackets; the answers to the defendant's points; the rejection
of certain testimony on behalf of the defendant; and that the
charge did not adequately present the case but prejudiced the
jury against the defendant.

_G. A. Endlich_ and _J. W. Ryon,_ for plaintiff in error.—Under
the act of March 30, 1875 (P. L. 35, 2 Purdon's Digest, 1355),
changes of venue shall be made in any civil cause in law or equi-
ty depending in any of the courts of this commonwealth in the
cases following,—to wit, whenever a large number of the inhab-
itants of the county in which such case is pending have an in-
terest in the question involved therein, adverse to the applicant,
and it shall appear by the oath of such applicant that he believes
he .cannot have a fair and impartial trial; whenever it shall be
made to appear to the court that a fair and impartial trial can-
not be had in the county in which such cause is pending.

In the present case, the utterance sued for as slanderous arose
out of the circumstances attending the criminal prosecution
against Healy for changing the figure 9 to 0 in the assessment
book. All these circumstances were bound to be inquired into
upon the trial of the cause. In this inquiry, one of the principal
questions involved in the case, every taxpayer and citizen of the
county was essentially interested adversely to the petitioner.

A defendant is responsible only for the meaning which the
words used by him, reasonably interpreted, convey to the under-
standing of the persons in whose presence they were uttered.

Brettun v. Anthony, 103 Mass. 39, 40; Fowle v. Robbins, 12 Mass. 498.

"When the words are susceptible of a harmless meaning, it is for the plaintiff to show that they were used in a libelous and not in a harmless sense. If the plaintiff attributes to them a much wider and more extensive meaning than they fairly warrant, or the words do not fairly bear the meaning imputed to them, the defendant will be entitled to a verdict." 2 Addison, Torts, § 1153, citing Broome v. Gosden, 1 C. B. 728; Williams v. Gardiner, 1 Mees. & W. 249.

The natural meaning and effect of the words spoken, as interpreted and understood in themselves, cannot be enlarged by the innuendo. Shaffer v. Kintzer, 1 Binn. 537, 2 Am. Dec. 488; Packer v. Spangler, 2 Binn. 60; Gosling v. Morgan, 32 Pa. 273; Hill v. Boswell, 2 Pittsb. 336; Adams v. Stone, 131 Mass. 433; Brown v. Piner, 6 Bush, 518; Weil v. Altenhofen, 26 Wis. 708.

This meaning and effect are to be gathered, not only from the particular phrase complained of as slanderous, but from its context as well; and if the context negatives the idea that the meaning contended for by plaintiff was that in which words were spoken—if the "poisonous words are accompanied with the antidote to the poison"—no action lies. Colbert v. Caldwell, 3 Grant Cas. 181; Stitzell v. Reynolds, 67 Pa 54. 5 Am. Rep. 396; Hall v. Adkins, 59 Mo. 144; McCaleb v. Smith, 22 Iowa, 242; Hayes v. Ball, 72 N. Y. 418; Edie v. Brooks, 2 Brightly's Digest, 2188, ¶ 5; Castleman v. Hobbs, Cro. Eliz. pt. 1, p. 428.

The action given to professional men and tradesmen on account of words spoken of them in relation to and to the injury of their business is not meant to extend to them and their characters a higher protection than is secured to other citizens, but for the purpose of affording equal security to all. Goodenow v. Tappan, 1 Ohio, 60.

They may be assailed in their profession or trade in a manner, and are exposed to attacks to which others are not liable. For such cases this action gives redress. It cannot be used for a term of general obloquy and reproach applied to the plaintiff as a citizen merely, any more than if he did not follow his particular profession or trade. Id.

Being called a "blackmailer" might, it is conceivable, prove an injury to a person in any avocation; and if he can show that it

did so, and that it was untrue, he may recover; but it charges no indictable and infamous crime; and hence, without such proof, is not generally actionable. Stitzell v. Reynolds, 67 Pa. 54, 5 Am. Rep. 396; Kimmis v. Stiles, 44 Vt. 351; McKee v. Wilson, 87 N. C. 300.

In every reported case that it has been possible to find, in which an attorney was permitted to recover in such an action, the slander was directly and explicitly connected with his professional character. Rush v. Cavenaugh, 2 Pa. St. 187; Garr v. Selden, 6 Barb. 416; Goodenow v. Tappan, 1 Ohio, 60; Chipman v. Cook, 2 Tyler (Vt.) 456.

There was nothing of the kind in this case. Mr. Dettra's profession as an attorney at law was not referred to. No such reference can be fairly gathered from the allegations of the declaration, and though judge and jury think the publication proved libelous, yet, if on the record it appears not to be so, judgment must be arrested. Hearne v. Stowell, 12 Ad. & El. 731; Goldstein v. Foss, 6 Barn. & C. 159; Solomon v. Lawson, 8 Q. B. 837.

The colloquium, which sets forth the matter to which the conversation relates, and the innuendo, which alleges the meaning of it, must both be established as true, before the plaintiff can show a right of action. Barger v. Barger, 18 Pa. 489, 492.

But even if there were something in the character of the charge of blackmailing or in the evidence, to connect it with Dettra's profession as a lawyer, the word "blackmailer" was so qualified by the context as to rob it of its sting. "Blackmail" is defined as "extortion of money from a person by threats of accusation or exposure, or of opposition in the public prints." Webster.

"Money extorted from a person as a condition of refraining from making charge of offense against him, or publishing something to his prejudice, . . . in common parlance, and in general acceptation, is equivalent to and synonymous with extortion—the exaction of money either for the performance of a duty, the prevention of an injury, or the exercise of an influence. It supposes the service to be unlawful, and the payment involuntary." 1 Abbott Law Dict. 151.

"Money extorted from persons under the threat of exposure in print for an alleged offense." Edsall v. Brooks, 3 Robt. 293.

Healy said: "You are a blackmailer; I mean thereby that,

as Jacobs told me, you received a part of the $325 I paid to settle a criminal prosecution." To "receive" does not mean to "extort." Hence it is said in Edsall v. Brooks, 17 Abb. Pr. 221, 2 Robt. 29, that a charge of blackmailing "imports criminal exaction of money, and is not justified by evidence that the plaintiff (a policeman in that case) received a gratuity in violation of a rule of the department."

In slander it is sufficient if the substantial slanderous words are laid and proved. Hersh v. Ringwalt, 3 Yeates, 508, 2 Am. Dec. 392.

But it is not permitted to drop altogether both the language and ideas uttered, and sum up all in one round charge, and then leave it to the jury to say whether the words proved amounted to that charge. Tipton v. Kahle, 3 Watts, 90, 93.

Hence, a witness cannot be permitted to state the impression produced on his mind by the whole conversation. Harrison v. Bevington, 8 Car. & P. 708.

Damages can be recovered only for the words charged in the declaration. Ward v. Dick, 47 Conn. 300, 36 Am. Rep. 75.

It could not be allowed to the plaintiff to support an averment that defendant had said "he is guilty of perjury" by words altogether different, even if they imported that charge. Tipton v. Kahle, 3 Watts, 90, 93; Bundy v. Hart, 46 Mo. 460, 2 Am. Rep. 525; Tucker v. Call, 45 Ind. 31; M'Connell v. M'Kenna, 10 Ir. C. L. Rep. 511; Armitage v. Dunster, 4 Dougl. K. B. 291.

The substance of the words laid, *i. e.*, the material words conveying the slander, must be proved (Johnston v. Tait, 6 Binn. 121), and their sense and the manner of speaking them must be the same as laid in the declaration. Long v. Fleming, 2 Miles (Pa.) 104.

Whether the proofs vary from the allegations is always a matter for the court. Oxley v. Storer, 54 Ill. 159; Hendrick v. Kellogg, 3 G. Greene, 215; Birch v. Benton, 26 Mo. 153.

The very words need not be proved; but where they are in fact proved, they must, it seems, correspond with the very words laid. Foster v. Small, 3 Whart. 141.

In the present case the words proved did not correspond with the very words laid. Instructions, correct in the abstract, may be erroneous as applied to the issue. Mitchell v. Mitchell, 4 Sad. Rep. 43.

A jury is to decide upon the basis of evidence legally brought

before them, not upon the basis of their own knowledge of the circumstances connected with the case acquired by them, individually, outside of it. Clarke v. Robinson, 5 B. Mon. 55.

Where actionable words are laid in the declaration and have been proved, evidence of the repetition of the same words after suit brought may be admitted in aggravation of damages. Kean v. M'Laughlin, 2 Serg. & R. 469.

It was said in Wallis v. Mease, 3 Binn. 546, 549, that, after proving the words laid in the declaration (which were actionable), plaintiff might give in evidence other words, not actionable, to show malice. Anger (Freeman v. Tinsley, 50 Ill. 497), sudden passion (Flagg v. Roberts, 67 Ill. 485), heat of passion and excitement (Mousler v. Harding, 33 Ind. 176, 5 Am. Rep. 195), have always been regarded as elements in mitigation of damages.

It must be shown, in order to a recovery, that words uttered in a case of mutual provocation affected the standing and reputation of the aggrieved party. Johnston v. Barrett, 36 La. Ann. 320.

If the actual damages are merely nominal, punitive damages are not recoverable. Stacy v. Portland Pub. Co. 68 Me. 279.

Instructions must be interpreted in connection with the evidence. Wood v. Pennell, 51 Me. 52.

Probable cause for suspicion and honest belief in its correctness are uniformly held to be potent factors in mitigation of damages. Porter v. Botkins, 59 Pa. 484; Minesinger v. Kerr, 9 Pa. 312; Williams v. Mayer, cited in 1 Binn. 92, note; Beehler v. Steever, 2 Whart. 313; Kellogg v. Cary, 3 Penr. & W. 102; Doe v. Roe, 32 Hun, 628; Huson v. Dale, 19 Mich. 17, 2 Am. Rep. 66; Knobell v. Fuller, Peake N. P. Add. Cas. 139.

In all civil cases the degree of proof required from a party to sustain his allegations is only such as results from a preponderance of evidence. An instruction to the jury that even a slight preponderance of proof will be sufficient to justify a verdict for the party in whose favor it is found has been held correct. Chapman v. McAdams, 1 Lea, 500.

So an instruction that all that is required is a "fair" preponderance of proof. Bryan v. Chicago, R. I. & P. R. Co. 63 Iowa, 464, 19 N. W. 295; Zonker v. Cowan, 84 Ind. 395.

On the other hand it has been held error to charge the jury that a party's case must be established by a clear preponderance

(Bitter v. Saathoff, 98 Ill. 266); or by testimony in which the jury had implicit confidence (Ott v. Oyer, 106 Pa. 6); or by weight of the evidence (Shinn v. Tucker, 37 Ark. 580); or that the party must clearly prove his case (Beach v. Clark, 51 Conn. 200); or clearly and fairly (Hall v. Wolff, 61 Iowa, 559, 16 N. W. 710); or that the jury must be well satisfied of the truth of his case (Monaghan v. Agricultural F. Ins. Co. 53 Mich. 238, 18 N. W. 797); or that he must satisfactorily prove it by a preponderance of evidence (Baucwitz v. Tyman, 11 Ill. App. 186); or that the jury must be satisfied from a preponderance of evidence (Brent v. Brent, 14 Ill. App. 256; White v. Gale, 14 Ill. App. 275, and Balohradsky v. Carlisle, 14 Ill. App. 289).

That, taken singly, no part of a charge may be pronounced to be clearly erroneous, and yet that as a whole it may mislead, is a matter familiar to the minds of lawyers and judges. Wenger v. Barnhart, 55 Pa. 300, 310, Citing Philadelphia & R. R. Co. v. Spearen, 47 Pa. 303, 86 Am. Dec. 544; Reeves v. Delaware, L. & W. R. Co. 30 Pa. 460, 72 Am. Dec. 713. And hence such general tenor is ground for reversal. Washington Mut. F. Ins. Co. v. Rosenberger, 3 W. N. C. 16, 33 Phila. Leg. Int. 338.

*Henry C. G. Reber* and *H. Willis Bland,* for defendant in error.—The power to change the venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be provided by law. Const. art. 3, § 23.

Under the act of March 30, 1875, the court is not compelled to change the venue in civil cases, if any of the causes for a change mentioned in the act are regularly averred, unless satisfied of the truth of them. Whether the facts alleged are true or not is left to the decision of the court. Pennsylvania Canal Co. v. Philadelphia & R. R. Co. 2 Pearson (Pa.) 299.

Error cannot be assigned on a matter in the discretion of the court below (Pringle v. Pringle, 59 Pa. 281; Waldron v. Waldron, 55 Pa. 231; Dubois v. Glaub, 52 Pa. 238; Helfenstein v. Leonard, 50 Pa. 461); unless in a clear case of abuse of the discretion vested in the court. Gallagher v. Miller, 34 Phila. Leg. Int. 355; Com. v. Bartilson, 85 Pa. 482.

Words spoken of a plaintiff in the way of his profession or trade are actionable, without proof of any special damages. Rush v. Cavenaugh, 2 Pa. St. 189; M'Clurg v. Ross, 5 Binn. 218;

Sanderson v. Caldwell, 45 N. Y. 398, 6 Am. Rep. 105; White v. Carroll, 42 N. Y. 161, 1 Am. Rep. 503; Foot v. Brown, 8 Johns. 64; Chipman v. Cook, 2 Tyler (Vt.) 456.

It must injure the plaintiff's reputation to disparage him in his very means of livelihood.    Odgers, Libel & Slander,* p. 64.

To render words actionable it must appear they were spoken of the plaintiff in his profession, business, or vocation,—as, to say of an attorney, "You are well known to be a corrupt man and to deal corruptly" (4 Coke, 16), or to charge an attorney with being a "common barrator:"   Cro. Car. 192.

Any words tending to impair his credit, spoken of a person in relation to his trade or profession, are actionable.    Davis v. Davis, 1 Nott & M'C. 290.

Where the court sees that the words spoken affect the plaintiff in his office, profession, or trade, and directly tend to prejudice him, then they ask for no further proof of damages.    Odgers, Libel & Slander,* p. 64.

Words to be actionable on this ground "must touch the plaintiff in his office, profession, or trade;" that is, they must have been shown to have been spoken of the plaintiff in relation thereto, and to be such as would prejudice him therein.    They must impeach either his skill or knowledge, or his official or professional conduct.    Odgers, Libel & Slander,* p. 65.

It must always be averred on the record that the words were spoken of the plaintiff in the way of his business, and in relation to his office, profession, and trade, and that he held such office, or was actively engaged in such profession at the time the words were spoken.    Odgers, Libel & Slander,* pp. 64, 68; Bellamy v. Burch, 16 Mees. & W. 590; Forward v. Adams, 7 Wend. 204; Van Tassel v. Capron, 1 Denio, 250, 43 Am. Dec. 667.

Where words clearly refer to the plaintiff's office and his conduct therein, or otherwise touch and injure him therein, it is unnecessary that the defendant shall expressly name his office or restrict his words thereto; it shall be intended that he was speaking of him in the way of his office or trade.    Odgers, Libel & Slander,* p. 124; Kinney v. Nash, 3 N. Y. 177.

The words must impute to him misconduct in that character. Ireland v. McGarvish, 1 Sandf. 155.

But it is by no means necessary that the defendant should expressly name the plaintiff's office or trade at the time he spoke, if the words would necessarily affect the plaintiff in his office or

business, his credit and reputation therein. Jones v. Littler, 7 Mees. & W. 423; Odgers, Libel & Slander,* p. 543.

Blackmail in common parlance is synonymous with extortion, the exaction of money, either for the performance of a duty, the prevention of an injury, or the exercise of an influence; it supposes the service to be unlawful and the payment involuntary. Edsall v. Brooks, 2 Robt. 29, 26 How. Pr. 326, 17 Abb. Pr. 221, 3 Robt. 286.

Proof of speaking the slander is by calling those who heard the defendant speak the words. Odgers, Libel & Slander,* p. 538.

It was never necessary to prove all the words laid in the declaration, if the words that are proved are intelligible and actionable by themselves.

It is sufficient if the words alleged and those proved are the same in substance. Estes v. Antrobus, 1 Mo. 197, 13 Am. Dec. 496.

The plaintiff is not bound to prove the slanderous words precisely as said; the substance of the charge will be sufficient. Hume v. Arrasmith, 1 Bibb, 165, 4 Am. Dec. 626; Williams v. Miner, 18 Conn. 464, 474; Hersh v. Ringwalt, 3 Yeates, 508, 2 Am. Dec. 392; Cummin v. Smith, 2 Serg. & R. 441; M'Connell v. M'Coy, 7 Serg. & R. 226; Foster v. Small, 3 Whart. 140.

The plaintiff may give evidence of all "surrounding circumstances," *i. e.,* the cause and occasion of publication, later statements made by the defendant, and other extraneous facts which will explain and point the allusion. Odgers, Libel & Slander, *p. 540; Broome v. Gosden, 1 C. B. 728.

What the speaker intended to convey is immaterial in all actions of defamation. Odgers, Libel & Slander,* p. 93; Hankinson v. Bilby, 16 Mees. & W. 445.

It will then be for the jury to say whether the plaintiff's construction of the words is borne out by the evidence. Odgers, Libel & Slander,* p. 102.

The general rule as to the interpretation of words is that the words spoken are to be construed in the sense in which they are understood by those who hear them. Backus v. Richardson, 5 Johns. 476.

The meaning of words not unavoidably imputing something derogatory to the person of whom they are published must be submitted to the jury. Lewis v. Chapman, 16 N. Y. 369.

The court can only pronounce them prima facie libelous. Cooper v. Stone, 24 Wend. 434.

Nice exceptions are never allowed to prevail against a reasonable interpretation and common understanding of slander. 2 Wils. 87, 114, 300.

The words shall be taken in the same sense as they would be understood by those who hear or read them. Bull, N. P. 3, 4.

Words are not to be received in *mitiori sensu,* but in the plain and popular sense in which the world in general understands them. Lukehart v. Byerly, 53 Pa. 418; Brown v. Reiter, 21 Pittsb. L. J. 143; Peters v. Ulmer, 32 Phila. Leg. Int. 441; Dorland v. Patterson, 23 Wend. 422; Woolnoth v. Meadows, 5 East, 468.

It is the duty of a judge to say whether a publication is capable of the meaning ascribed to it; but when the judge is satisfied of that, it must be left to the jury to say whether the publication has that meaning or not. Addison, Torts, § 1169, p. 391; Sturt v. Bragg, 10 Q. B. 908; Odgers, Libel & Slander,* p. 101.

The court will take notice of the import of words in popular parlance. Call v. Foresman, 5 Watts, 331.

It must appear to the court from the words set out in the declaration that they are capable of conveying or bearing the defamatory meaning assigned to them, and if so it is for the jury to determine whether in point of fact the construction put upon the words by the plaintiff is borne out by the evidence. 2 Addison, Torts, § 1153.

"The sense in which words are received by the world is the sense which courts of justice ought to ascribe to them on the trial of an action for slander." Rue v. Mitchell, 2 Dall. 58, 1 L. ed. 288, 1 Am. Dec. 258.

In civil cases the court is bound to instruct the jury as to whether the publication is libelous, supposing the innuendoes to be true. M'Corkle v. Binns, 5 Binn. 340, 6 Am. Dec. 420; Hays v. Brierly, 4 Watts, 392; Snyder v. Andrew, 6 Barb. 43; Green v. Telfair, 20 Barb. 11; Hunt v. Bennett, 19 N. Y. 173; Pittock v. O'Niell, 63 Pa. 257, 258, 3 Am. Rep. 544.

The only criterion of the meaning of words as used on any occasion is the understood meaning in the community, society or individuals to whom they are addressed. Edsall v. Brooks, 3 Robt. 284.

It is for the judge to decide whether the language is capable of the meaning ascribed to it by the innuendo, and for the jury to decide whether such meaning is truly ascribed. Vanderlip v. Roe, 23 Pa. 82; Barger v. Barger, 18 Pa. 489; Pittock v. O'Niell, 63 Pa. 253, 3 Am. Rep. 544.

In Pennsylvania the court is bound to instruct the jury whether the publication is libelous or not. Townshend, Slander & Libel, 530; Pittock v. O'Niell, 63 Pa. 253, 3 Am. Rep. 544.

An innuendo may be defined to be an averment which explains the meaning of the defendant's publication, by reference to facts previously ascertained by averment or otherwise. Starkie, Slander & Libel, p. 256; 1 Ld. Raym. 256.

Whether the language is capable of bearing the meaning assigned by the innuendo is for the court; whether the meaning is truly assigned to the language is for the jury. Blagg v. Sturt, 10 Q. B. 899; 3 H. L. Cas. 395.

And if the court is of the opinion that the words were capable of the meaning ascribed to them by the innuendo, and there is any evidence to go to the jury, that they were used with that meaning, then it will be for the jury to decide whether in fact the words were understood in that sense by those who heard or read them. Odgers, Libel & Slander,* p. 540.

The charge must be taken as a whole. Reeves v. Delaware, L. & W. R. Co. 30 Pa. 460, 72 Am. Dec. 713; Lehigh Valley R. Co. v. Brandtmaier, 113 Pa. 619, 6 Atl. 238; Watts v. Cummins, 59 Pa. 88; Kerr v. Sharp, 14 Serg. & R. 403; Carothers v. Dunning, 3 Serg. & R. 373.

The jury take into consideration every consequence which the words used would have a tendency to produce, but not merely problematical or eventual damages which may possibly happen, or possibly may not. Odgers, Libel & Slander,* p. 293; Onslow v. Horne, 3 Wils. 188; Lumby v. Allday, 1 Cromp. & J. 305; Doyley v. Roberts, 3 Bing. N. C. 835.

Even if no evidence be offered by the plaintiff, as to damages, the jury are in no way bound to give nominal damages only; they may give such substantial damages as will compensate the plaintiff for such defamation. Tripp v. Thomas, 3 Barn. & C. 427; Odgers, Libel & Slander, *p. 293.

Where the derangement was great and notorious, so that speaking the words could produce no effect on the hearers, it was manifest that no damage would be incurred; but where the de-

gree of insanity was slight, or not uniform, the slander might have its effect, and it would be for the jury to judge upon the evidence before them, and measure the damages accordingly. Dickinson v. Barber, 9 Mass. 225, 6 Am. Dec. 58; Odgers, Libel & Slander, *p. 354.

It is a common-law principle that a lunatic is liable for any tort he may commit, although he is not punishable criminally. When one receives an injury from the act of another, this is a trespass, although done by mistake or without design; consequently there is no reason why a lunatic should not be held liable. Morse v. Crawford, 17 Vt. 502, 44 Am. Dec. 349.

Ordinarily in an action for a personal injury, the damages are graduated by the intent of the party committing the injury; but when the defendant is a lunatic, as he has properly no will, the only correct measure of damages is the mere compensation of the party injured. Krom v. Schoonmaker, 3 Barb. 647; Bush v. Pettibone, 4 N. Y. 300.

The general rule is that lunatics are liable civilly for all torts or wrongs committed. But there is one exception to this rule, which is that a lunatic is not liable for slanderous words uttered by him while totally deranged. Bryant v. Jackson, 6 Humph. 199.

In this case there was no attempt to prove that the defendant's mind had become so weakened by disease that no one regarded what he said. Gates v. Meredith, 7 Ind. 440.

The law presumes sanity when an act is done. Lynch v. Com. 77 Pa. 213.

A reasonable doubt of the fact of insanity cannot be a true basis of the finding of it, as a fact and as a ground of acquittal and of legal custody. Ortwein v. Com. 76 Pa. 423, 18 Am. Rep. 420.

Where insanity is alleged, the burden of proof is on the party making the allegation, notwithstanding its negative character. 1 Greenl. Ev. § 81, pp. 113, 114; Coyle v. Com. 100 Pa. 580, 45 Am. Rep. 397.

The measure of proof must be determined by the character of the issue being tried, and not by the character of an issue which is not being tried. The amount of evidence required must depend, in a great measure, upon the character of the issue to be tried. If there are no opposing presumptions, a mere preponderance of evidence, however slight, must necessarily turn the

scale. The strength of the preponderating evidence must be in proportion to the strength of the presumption to be overcome; or perhaps it is more accurate to say that there is no preponderance, unless the evidence is sufficient to overcome the opposing presumption as well as the opposing evidence. Knowles v. Scribner, 57 Me. 495.

By satisfactory evidence, which is sometimes called sufficient evidence, is intended that amount of proof which ordinarily satisfies an unprejudiced mind beyond reasonable doubt. 1 Greenl. Ev. § 2, p. 4; 1 Starkie, Ev. 514; Young v. Edwards, 72 Pa. 267.

"Convinced" is defined "to satisfy by proof." Webster, Dict. The word "positive" is defined by Webster to mean "direct," "express," opposed to "circumstantial." The proof should be "satisfactory;" it may be such without being "positive." Schrack v. McKnight, 84 Pa. 30.

The phrases "if you believe," "if you are satisfied," "if you are convinced," only imply the existence of a state of mind involving the assumption of a fact as proved to such a degree of belief that the believing subject would act upon the belief in the common concerns of life. Hiester v. Laird, 1 Watts & S. 250.

If the charge taken as a whole fairly leaves the question of fact to the jury, it is sufficient. Little Schuylkill Nav. R. & Coal Co. v. French, 81* Pa. 366; Reese v. Reese, 90 Pa. 89, 35 Am. Rep. 634.

Error cannot be assigned to the charge of the court upon matters of fact if the facts be submitted to the jury. Thompson v. Franks, 37 Pa. 327; McDowell v. Oyer, 21 Pa. 417; Levers v. Van Buskirk, 4 Pa. 309; Hamet v. Dundass, 4 Pa. 178.

A portion of a charge which, if taken by itself, might be exceptionable may be free from error because of the context. Alexander v. Com. 105 Pa. 10.

The court will not reverse on a critical objection to the charge, if the judge has expressed himself so as to be understood by the jury. Kerr v. Sharp, 14 Serg. & R. 399; Lackawanna & B. R. Co. v. Chenewith, 52 Pa. 382, 91 Am. Dec. 168.

The supreme court will not reverse a judgment merely because of a slight error in the instruction of the court below to the jury, which could have done no injury to the plaintiff in error. Knapp v. Hortung, 103 Pa. 403.

Instructions as to the measure of damages, which were not fol-

lowed by the jury and which consequently did no harm to the plaintiff, are not sufficient grounds upon which to reverse a judgment. Sayer v. Schroeder, 2 Pennyp. 83.

It is not error in the court to express an opinion that mere nominal damages should be given in case of recovery, if the amount be left to the jury. Oswald v. Kennedy, 48 Pa. 9.

An error in the charge which the verdict has rendered immaterial is not ground for reversal. Deford v. Reynolds, 36 Pa. 325; Eldred v. Hazlett, 38 Pa. 16.

A strong expression of opinion upon the facts which, taken in connection with the whole charge, does not amount to a binding instruction, is not ground for reversal. Johnston v. Com. 85 Pa. 54, 27 Am. Rep. 622.

It is not error for the court to comment on the evidence, nor to express an opinion on the weight thereof, if the facts be left to the jury. Bonner v. Herrick, 99 Pa. 220.

The refusal of a point which might properly have been affirmed, but the affirmance of which would not have benefited the party submitting it, is not cause for reversal of the judgment against said party. Pardee v. Orvis, 103 Pa. 451.

PER CURIAM:

It is clear that a large number of the inhabitants of the county did not have an interest in the question involved in the trial, adverse to the defendant below, so as to make it obligatory on the court to order the change of venue. When the change is asked for on the alleged ground that a fair and impartial trial cannot be had in the county in which the suit is pending, a reasonable discretion must be left to the court in ascertaining the truth of the averment. No such clear abuse of that discretion is shown in this case as to justify us in holding there was any error in the refusal.

Notwithstanding the able and zealous argument of the counsel for the plaintiff in error, we are not able to sustain any of the thirty-five specifications of error.

We discover no error relating to the admission of evidence. The points were correctly answered and the testimony was submitted to the jury in a fair charge.

Judgment affirmed.